### MALVIN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 24, 1918.)

#### No. 194.

1. CRIMINAL LAW ⬤➡1159(1)—REVIEW—EVIDENCE—SENTENCE.

The evidence, being for the jury and they having believed it, will not be reviewed in detail; and the sentence imposed by trial court must be carried into effect, unless some errors of law have been committed.

2. BANKRUPTCY ⬤➡485—TITLE OF TRUSTEE—"PROPERTY BELONGING TO ESTATE IN BANKRUPTCY"—FIRM ASSETS.

In view of Bankruptcy Act July 1, 1898, § 70 (Comp. St. 1916, § 9654), where partner appropriated firm assets with concurrence of copartners, the assets so withdrawn, upon his bankruptcy individually and as member of the firm, was "property belonging to his estate in bankruptcy,"

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

252 F.—29

within section 29b (section 9613), making concealment of such property from trustee a crime.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Property Belonging to Estate in Bankruptcy.]

3. CONSPIRACY &==28—VIOLATION OF BANKRUPTCY ACT—CONCEALMENT OF ASSETS. 

Where bankruptcy of partnership was inevitable, a plan agreed upon by the partners and their attorney, pursuant to which proceeds of customer's checks were converted by a partner, and upon his bankruptcy individually and as a member of the firm were withheld from trustee, was a conspiracy to commit offense against United States, under Criminal Code, § 37 (Comp. St. 1916, § 10201); the concealment of check proceeds from trustee being in violation of Bankruptcy Act July 1, 1898, § 29b (Comp. St. 1916, § 9613).

4. INDICTMENT AND INFORMATION &==73(1)—REPUGNANCY—CONCEALMENT OF ASSETS IN BANKRUPTCY.

In indictment for conspiracy to conceal assets from trustee in bankruptcy, averments that the property which was to belong to bankrupt estate consisted of proceeds of sale of firm merchandise, and that property to be concealed belonged to partners individually and as members of firm, *held* not repugnant, when considered with other averments.

5. CONSPIRACY &==43(6)—CONCEALMENT OF ASSETS—INDICTMENT.

Indictment for conspiracy to conceal assets from trustee in bankruptcy *held* not subject to motion to quash.

In Error to the District Court of the United States for the Southern District of New York.

Louis Malvin and others were convicted of conspiracy to violate the provisions of Bankruptcy Act July 1, 1898, relating to the concealment of assets by bankrupts, and they bring error. Affirmed.

Walter C. Noyes, of New York City, for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (James W. Osborne, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. The defendants have been convicted of the crime of conspiring to violate the provisions of Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, relating to the concealment of assets by bankrupts. The act (section 29b [Comp. St. 1916, § 9613]), provides that:

"A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy."

And the United States Criminal Code (Act March 4, 1909, c. 321, § 37, 35 Stat. 1096 [Comp. St. 1916, § 10201]) provides that:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

&==For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The jury returned a verdict of guilty against each of the defendants, Kuntz and Louis and Samuel Malvin. One Isaias A. Lehman, who was jointly indicted with the others was acquitted by the jury.

The defendant Henry Kuntz had been the attorney for the bankrupts in their bankruptcy proceedings, and the charge is that he had instigated the bankruptcy with a view of personal profit, and had aided the bankrupts to conceal assets from the trustee. At the time of the trial Kuntz testified that he was a member of the New York bar, having been admitted in 1898, and that he had from that time continuously practiced in New York City, and that his practice had been very extensive; his specialty being the trying of jury cases. The court sentenced him to imprisonment in the federal penitentiary at Atlanta, Ga., for a term of two years, and to pay a fine of $5,000. In imposing sentence the court said in part:

"I believe that the defendant Henry Kuntz is guilty of this crime charged beyond any doubt. I think the verdict of the jury is a wholesome one and thoroughly right. I think that most of the testimony which he gave in his own behalf was untrue. I am also thoroughly satisfied that he did not advise his clients honestly—that he did not exercise good faith towards them in the matters in which he was employed by them."

Louis Malvin was the executive head of the firm, and it is said that in fact he was the partnership. He was sentenced to imprisonment at Atlanta for a term of two years. In imposing sentence upon him the court stated that he believed the verdict as to him was thoroughly right. Samuel Malvin was a younger brother, whose relation to the partnership will be stated below. He was sentenced to imprisonment at the same place for a term of one year and one day. In imposing sentence upon him the court said that he believed the verdict as to him was thoroughly right, and that much of the testimony he gave on his own behalf was false. In imposing the sentences the court also stated that he did not take into account the false testimony which the defendants had given, as they were not before the court for giving false testimony.

[1] The theory of the government is that the firm of Louis Malvin & Co. early in January, 1914, found that it was fast approaching insolvency, and consulted Kuntz, its attorney, in reference thereto. The conclusion was reached that bankruptcy was inevitable and a plan was agreed upon to cause a petition in bankruptcy to be filed at an early day, and that in the meantime Louis Malvin should convert the proceeds of as many checks as possible sent in to the firm by its customers in payment of its accounts receivable and withhold them from the creditors of the firm. It is claimed that as a result of this plan at least $7,423.82 was fraudulently withheld from the estate. A so-called agreement was planned by Kuntz, which was falsely dated back as of December 20, 1913, which was signed by the members of the firm, and which purported to permit Samuel Malvin to withdraw from the partnership and transfer to himself accounts receivable in the sum of $17,350, and that this was done for the purpose of enabling Louis Malvin to withhold such sum from the trustee in bankruptcy. It is also claimed that Kuntz then obtained one Archibald

Palmer to file an involuntary petition in bankruptcy against Louis Malvin and Charles Malawista individually and as copartners, and that the petition was filed at the request of Kuntz. The evidence in detail we shall not review. It was for the jury and they have believed it, and unless some errors of law have been committed the sentences which the court has imposed must be carried into effect.

The indictment alleged that three persons, Louis Malvin, Samuel Malvin, and Charles Malawista, composed a partnership doing business under the firm name of Louis Malvin & Co. There are no allegations in the indictment that the said partnership was ever dissolved, or that the name Louis Malvin & Co. ever became applicable to any other partnership. The firm was engaged in the business of manufacturing wearing apparel from furs. The indictment, among other things, alleges:

"That on the 1st day of December, 1913, in the county of New York, Southern district of New York, and within the jurisdiction of this court, under the circumstances aforesaid, the said Louis Malvin and the said Samuel Malvin and said Henry Kuntz and one Isaias A. Lehman, late of the Southern district of New York, then and there anticipated, contemplated, and planned that a petition in bankruptcy should thereafter be filed to have said Louis Malvin and the said Charles Malawista, individually and as members of the firm of Louis Malvin & Co., adjudicated bankrupts under the bankruptcy laws of the United States, and that thereafter, in the due course of said bankruptcy proceedings, the said Louis Malvin and the said Charles Malawista, individually and as members of the firm of Louis Malvin & Co., would be duly adjudicated bankrupts, and that thereafter in the due course of the said bankruptcy proceedings a trustee in bankruptcy of the estate of said Louis Malvin and the said Charles Malawista, individually and as members of the firm of Louis Malvin & Co., would be duly appointed."

The defendants attach importance to the fact that according to the averments of the indictment the defendants did not contemplate or plan that the entire firm of Louis Malvin & Co., described as composed of three persons, Louis Malvin, Samuel Malvin, and Charles Malawista, should be declared bankrupt, and that a trustee of the entire firm should be appointed, but that such proceedings should be had only with respect to two of such persons, Louis Malvin and Charles Malawista described as members of the firm.

It is said by the defense that property cannot be concealed in a criminal sense from a trustee who is not entitled to receive it, and that you cannot conceal partnership assets from any trustee in bankruptcy, except a trustee of the partnership as he alone is entitled to receive them; that the partnership is a distinct entity, separate in estate and obligations from each of the partners and from the individual estates and obligations of each partner; that the partnership property belongs to that entity, or to a trustee of that entity, as distinguished from the individuals or from a trustee of the individuals who compose it; that the concealment of partnership property does not constitute the concealment of individual assets; that the indictment in this case charged defendants with conspiring to conceal from the trustee in bankruptcy of two individual members of the firm of Louis Malvin & Co. accounts and property belonging to the entire partnership, and should have been dismissed upon the ground that to consti-

tute a crime the property sought to be concealed must belong to the trustee of the bankrupts.

We may concede that the crime of conspiracy to conceal assets cannot be committed, unless the assets to be concealed are such as the trustee of the bankrupt is entitled to receive. The indictment upon which the defendants have been convicted charges them with having conspired to conceal a large number of outstanding accounts which belonged to the partnership of Louis Malvin & Co., and it also charges that that partnership was composed of Louis Malvin, Charles Malawista, and Samuel Malvin; but it appears that Samuel Malvin was not adjudged a bankrupt, that the partnership was not adjudged a bankrupt, and that no proceedings were instituted to have either adjudged a bankrupt, and the accounts which the defendants are charged with having conspired to conceal are accounts which are alleged to have been transferred by the firm of Louis Malvin & Co. to Samuel Malvin, and moneys represented by the check of the firm of Louis Malvin & Co. to the defendant Lehman, who has been acquitted, as already stated. So that one question is whether the accounts and the money so transferred constituted assets which would belong to the trustee of Louis Malvin and Charles Malawista "adjudged bankrupts individually and as members of the firm of Louis Malvin & Co. We think this question must be answered in the affirmative.

[2] If a member of a partnership, with the knowledge and consent of his associates in the firm, withdraws assets belonging to it, intending to make the assets so withdrawn a part of his individual estate, the assets so withdrawn become so far a part of that individual's estate that upon his bankruptcy the trustee appointed to administer the estate would be entitled to take possession of such property and the proceeds thereof as property belonging to his estate in bankruptcy. In a jurisdiction in which firm creditors have no lien, except through the equities of the partners, the trustee under the circumstances stated would take free from liens; and in a jurisdiction in which firm creditors have a lien not dependent upon the equities of the partners the trustee would take subject to the lien, but in any event the trustee would be entitled to take. The testimony shows that Louis Malvin withdrew from the partnership various customers' checks which passed through the hands of defendant Kuntz who turned over the proceeds to Louis Malvin, and that the latter did not turn them in to the partnership nor turn them over to his trustee in bankruptcy; and the claim of the government is that this action of Louis Malvin's in thus appropriating these assets was with the concurrence of his copartners and in furtherance of the conspiracy to conceal. In withdrawing the assets thus appropriated Louis Malvin made them a part of his individual estate, and it follows that in witholding them from his trustee in bankruptcy he withheld assets belonging to his estate in bankruptcy. The court cannot see how it can be seriously contended that a conspiracy on the part of the defendants that Louis Malvin should withdraw this property from the firm and appropriate it to his own use thereby making it a part of his individual estate, and that he should then conceal it from his trustee, does not amount

to a concealment of property within the provision of section 29b of the Bankruptcy Act, or that a conspiracy that Louis Malvin should conceal such property is not to be regarded as a violation of section 37 of the United States Criminal Code heretofore quoted.

The concealment which section 29b punishes is by the language of the provision a concealment from the trustee of "any of the property belonging to his estate in bankruptcy," and section 70 of the Bankruptcy Act declares that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt (subject to an exception not necessary now to notice) "to all property which prior to the filing of the petition against him he could by any means have transferred or which might be levied upon and sold under judicial process against him." The theory of the prosecution is that the word "property belonging to his estate in bankruptcy" includes any and all property in the bankrupt's possession which he could by any means have transferred, without respect to the fact that the bankrupt's title may be defeasible. The defense certainly cannot claim and does not claim that the statute refers to such property only as the trustee has an absolute and indefeasible title to, or that it does not include property which the bankrupt has taken into his possession as his own. That of course cannot be the law, and because it is not the law it cannot be successfully maintained that the moneys of the firm which in accordance with the understanding of the conspirators found their way into the individual estate of Louis Malvin, never being entered on the books of the partnership, were not assets to which Louis Malvin's trustee was entitled. It does not matter whether or not in the end he could retain them in his possession in case Samuel Malvin could claim the right to liquidate the firm's business and the trustee of the partnership should seek to recover these moneys from the trustee of Louis.

[3] Counsel for defendants assert that a charge to conceal assets belonging to A. from the trustee in bankruptcy of B. states no offense. That may be conceded, but that is not what the indictment charges. The language of the indictment is that the defendants—

"under the circumstances aforesaid, and anticipating, contemplating, and planning as aforesaid, willfully, knowingly, and unlawfully conspire to commit an offense against the United States; that is to say: That the said Louis Malvin and the said Samuel Malvin and the said Henry Kuntz and the said Isaias A. Lehman did willfully, knowingly, and unlawfully conspire and corruptly and fraudulently agree among themselves that they would knowingly and fraudulently, while the said Louis Malvin and the said Charles Malawista should be bankrupts, as aforesaid, conceal from the trustee of the assets and effects of the estate in bankruptcy of the said Louis Malvin and the said Charles Malawista, individually and as members of the firm of Louis Malvin & Co., certain properties which would, in the due course of the administration of the said estate in bankruptcy, belong to the said estate in bankruptcy, to wit, a large amount of moneys realized from the sale of merchandise belonging to the said firm of Louis Malvin & Co., amounting to not less than $2,000, the exact amount being to the grand jurors unknown, and other property, consisting of raw, dressed, and manufactured furs and skins, the kind, amount, and particular description of which are now to the grand jurors unknown."

We also agree that it is essential that the acts which the defendants conspired to commit would, if committed, have constituted a crime; and there is no doubt that the acts the defendants conspired to commit, and which in the opinion of the jury they did commit, constituted a crime. When Louis Malvin, with the knowledge and consent of his partners, appropriated to himself and made a part of his estate certain assets of the partnership which were concealed from his trustee, he concealed assets which had become rightly or wrongly assets of his estate; and it is evident that the charge was not that defendants had conspired to conceal assets belonging to A. from the trustee in bankruptcy of B. A., being a party to the conspiracy and consenting to what was done, had no right thereafter to the assets which he had relinquished to B., whatever the right of his creditors may or may not have been.

The court thinks that no error was committed at the trial in refusing to quash the indictment. The averment of the indictment is, as has already been indicated, that the defendants should conceal from the trustee "certain property which would in due course of the administration of the estate in bankruptcy, to wit, a large amount of moneys realized from the sale of merchandise belonging to the firm of Louis Malvin & Company." The averment is in the language of the statute. The property to be concealed is property which would belong to the said estate in bankruptcy. It does not describe the manner in which the property to be concealed would become the property of the estate in bankruptcy and no such averment is necessary. The words "belonging to the estate in bankruptcy" have a definite signification, and there is no doubt as to their meaning. United States v. Comstock (C. C.) 161 Fed. 644.

[4, 5] But the indictment averred that the property which was to belong to the said estate in bankruptcy consisted of a large amount of moneys realized from a sale of merchandise "belonging to the firm of Louis Malvin & Co.," and it is said that this averment is inconsistent with the averment that the property to be concealed was property belonging to the estate in bankruptcy of Louis Malvin and Charles Malawista individually and as members of the firm of Louis Malvin & Co. It does not, however, follow that moneys realized from the sale of merchandise belonging to a particular person necessarily belong to that person; and there is no averment that the moneys to be concealed belonged at the time of concealment to Louis Malvin & Co. We therefore do not think that the two averments are necessarily repugnant, or that they tended to the prejudice of the defendants when considered with the other averments of the indictment. There are cases, no doubt, in which indictments have been quashed for defects of no greater importance, and even of less importance. But, as Judge Lacombe said in Bromberger v. United States, 128 Fed. 346, 63 C. C. A. 76, courts have gone to the extremest verge of casuistry in finding technicalities to reverse criminal convictions. And in the same connection mention may once more be made of the often quoted remark of Lord Hale's:

"More offenders escape by the over-easy ear given exception in indictments than by their own innocence, and many heinous and crying offenses escape by these unseemly niceties to the reproach of the law, to the shame of the government, to the encouragement of villainy and to the dishonor of God." 2 Hale, P. C. 193.

There are 97 assignments of error in this case. Most of them were apparently abandoned upon the argument of the cause. We find it unnecessary in this opinion to refer specifically to any one of them not already noticed. We are unable to see that any prejudicial error occurred, and the majority of the court is convinced that the judgment of conviction should be affirmed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes